UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8:22cr343 SDM-AEP
18 U.S.C. § 371

TEVIN OBRIAN OLIVER
  a/k/a "King Himself," a/k/a "Pa"
JAMEAL KAIA PHILLIP
  a/k/a "Kai," a/k/a "Kaya," a/k/a "Kya"
EDWARD SOLOMAN KING III
  a/k/a "Ed"

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
(Conspiracy to Commit Smuggling – 18 U.S.C. § 371)

### A.   Introduction

At times material to this Indictment:

1. TEVIN OBRIAN OLIVER, a/k/a "King Himself," a/k/a "Pa" ("OLIVER"), was a citizen of Trinidad and Tobago and a lawful permanent resident of the United States who resided in the United States.

2. JAMEAL KAIA PHILLIP, a/k/a "Kai," a/k/a "Kaya," a/k/a "Kya" ("PHILLIP"), was a citizen of Trinidad and Tobago who resided in both Trinidad and Tobago and the United States.

3. EDWARD SOLOMAN KING III, a/k/a "Ed" ("KING), was a citizen of the United States who resided in the Middle District of Florida.

4. Individual-1 was a citizen of the United States who resided in the Middle District of Florida.

5. Individual-2 was a citizen of Trinidad and Tobago who resided in that country.

6. Individual-3 was a citizen of the United States who resided in the Middle District of Florida.

7. Individual-4 was a citizen of Trinidad and Tobago who resided in that country and visited the United States.

8. 18 U.S.C. § 554 prohibited a person from fraudulently or knowingly exporting or sending from the United States or attempting to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States.

9. 18 U.S.C. § 922(e) prohibited a person from knowingly delivering or causing to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition was being transported or shipped.

10. The Export Administration Regulations ("EAR") (15 C.F.R. Parts 730-774), as well as orders, licenses and authorizations issued thereunder, required a person to apply for and obtain an export license from the Department of Commerce before exporting certain commodities from the United States. The definition of

"export" in 15 C.F.R. § 734.13 included an actual shipment or transmission out of the United States, including the sending or taking of an item out of the United States, in any manner.

11.  The EAR (15 C.F.R. § 736.2(b)(1)) provided that an individual could not, without a license or license exception, export any item subject to the EAR to another country or reexport any item of United States origin if: a) the item was controlled for a reason indicated in the applicable Export Control Classification Number ("ECCN"); and, (b) export to the country of destination required a license for the control reason as indicated on the Country Chart at part 738 of the EAR. The Department of Commerce, Bureau of Industry and Security ("BIS"), also maintained the Commerce Control List ("CCL") within the EAR (15 C.F.R. Part 774, Supplement 1), which identified commodities subject to the export licensing authority of BIS.

12.  15 C.F.R. Part 742 set out the relevant CCL-based control policies of the United States. Specifically, 15 C.F.R. § 742.4 restricted the export of items that would make a significant contribution to the military potential of any other country or combination of countries that would prove detrimental to the national security of the United States. Similarly, 15 C.F.R. § 742.6 restricted the export of items in support of United States foreign policy to maintain regional stability. Additionally, 15 C.F.R. § 742.17 restricted the export of firearms to Organization of American States member countries, including Trinidad and Tobago.

13. Firearms, including pistols, were classified under ECCN 0A501.a on the CCL, for reasons related to national security, regional stability, and firearms convention. Therefore, a license was required under 15 C.F.R. §§ 742.4, 742.6, and 742.17 to export firearms to Trinidad and Tobago.

14. In the application for an export license, an exporter was required to state, among other things, the nature of the commodity to be exported, the end recipient or user of the commodity, and the purpose for which the commodity was intended. The Department of Commerce considered these factors in determining whether the export of the commodity would further the security and foreign policy interests of the United States.

### B. The Conspiracy

15. Beginning on an unknown date, but at least as early as in or around April 2019, and continuing until at least in or around April 2022, in the Middle District of Florida and elsewhere, the defendants,

> TEVIN OBRIAN OLIVER,
> a/k/a "King Himself," a/k/a "Pa,"
> JAMEAL KAIA PHILLIP,
> a/k/a "Kai," a/k/a "Kaya," a/k/a "Kya," and
> EDWARD SOLOMAN KING III,
> a/k/a "Ed,"

did knowingly and willfully conspire with each other and with other persons, both known and unknown to the Grand Jury, to commit offenses against the United States, that is, to fraudulently and knowingly export and send, and attempt to export and send, articles, merchandise, and objects contrary to any law or regulation of the

4

United States, specifically, by delivering and causing to be delivered a package or other container in which there is any firearm and ammunition, including a SAR Arms SAR-9 9mm pistol bearing serial number T1102-20BV75451, a Ruger Security-9 9mm pistol bearing serial number 384-03519, a Taurus G3 9mm pistol bearing serial number ABN369536, and a Taurus G2C 9mm pistol bearing serial number ABL113463, from the United States to Trinidad and Tobago, to a common or contract carrier for transportation or shipment in interstate or foreign commerce without written notice to the carrier that such firearm or ammunition was being transported or shipped contrary to 18 U.S.C. § 922(e), in violation of 18 U.S.C. § 554.

### C.  Manner and Means

16. The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others:

    a. It was part of the conspiracy that conspirators would and did acquire firearms and related equipment, including magazines, ammunition, and firearms parts, from sellers and other individuals in the United States.

    b. It was further part of the conspiracy that conspirators would and did arrange for firearms and related equipment to be acquired in, and transported through, the Middle District of Florida.

    c. It was further part of the conspiracy that conspirators would and did ask third parties to assist with acquiring and transporting firearms.

      d.    It was further part of the conspiracy that conspirators would and did falsely represent to firearms sellers the identities of the actual purchasers and recipients of the firearms, as well as their ultimate destination.

      e.    It was further part of the conspiracy that conspirators would and did transmit funds to pay for the firearms and related equipment, as well as to reimburse and pay conspirators, including transactions that occurred in the Middle District of Florida.

      f.    It was further part of the conspiracy that conspirators would and did exchange phone calls, text messages, audio messages, and other electronic communications to coordinate the acquisition and shipment of the firearms and related equipment.

      g.    It was further part of the conspiracy that conspirators would and did conceal the firearms and related equipment within boxing/fight equipment, speakers, and other household items, so as to avoid detection by law enforcement and customs authorities.

      h.    It was further part of the conspiracy that conspirators would and did unlawfully ship the concealed firearms and related equipment from the United States to Trinidad and Tobago by commercial shipping services, including common and contract carriers.

      i.    It was further part of the conspiracy that conspirators would and did falsely represent to shippers the contents of packages being exported from the United States.

j.  It was further part of the conspiracy that conspirators would and did deliver and cause to be delivered to common and contract carriers for transportation or shipment in foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, packages or other containers in which there was a firearm or ammunition without written notice to the carrier that such firearm or ammunition was being transported or shipped.

k.  It was further part of the conspiracy that conspirators would and did fail to apply for, and to obtain, licenses from the Department of Commerce to export firearms to Trinidad and Tobago, as required by federal law.

l.  It was further part of the conspiracy that conspirators would and did perform acts and make statements to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

### D.  Overt Acts

17.  In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Middle District of Florida and elsewhere:

a.  From on or about April 13, 2019, through on or about April 14, 2019, KING bought approximately 13 firearms from firearms sellers in the Tampa, Florida area, including a Romarm/Cugir model Micro Draco 7.62 caliber pistol bearing serial number PMD-11014-19 and a Taurus model PT111 G2A 9mm pistol

7

bearing serial number TMB66883.

   b. On or about July 29, 2019, KING told federal agents that the firearms that he had bought in April 2019 had all been stolen from his vehicle.

   c. On or about May 13, 2020, Individual-1 transferred approximately $1,000 to OLIVER.

   d. On or about May 22, 2020, Individual-1 received approximately $1,000.

   e. On or about May 23, 2020, Individual-1 bought two Taurus pistols from a firearms store in Tampa, Florida.

   f. On or about May 26, 2020, OLIVER transferred approximately $1,000 to Individual-1.

   g. On or about May 26, 2020, Individual-1 bought a Glock 26 pistol bearing serial number BDGF541 from a firearms store in Tampa, Florida.

   h. On or about June 4, 2020, Individual-2 sent to Individual-1 the phone number for Individual-3.

   i. On or about June 6, 2020, Individual-4 sent PHILLIP a photograph of a Glock 26 pistol bearing serial number BDGF541.

   j. In or around June 2020, Individual-1 transferred two Taurus pistols to Individual-3 in Tampa, Florida.

   k. In or around June 2020, KING transferred a Glock pistol to Individual-3 in Tampa, Florida.

l.  In or around June 2020, Individual-3 drove the two Taurus pistols and the Glock pistol that Individual-3 had received to OLIVER's mother's residence in Homestead, Florida.

m.  In or around June 2020, OLIVER and PHILLIP amassed firearms and firearms components at OLIVER's mother's residence in Homestead, Florida.

n.  On or about June 30, 2020, Individual-2 transferred approximately $1,509.58 to Individual-1.

o.  On or about June 30, 2020, Individual-1 transferred approximately $1,200 to OLIVER.

p.  On or about July 20, 2020, Individual-4, in phone messages, discussed with KING arranging a place for PHILLIP to stay to crash and "pack the stuff."

q.  On or about July 20, 2020, PHILLIP arranged to stay with Individual-3 in the Tampa area.

r.  In or around July 2020, PHILLIP discussed with Individual-3 concealing firearms inside of speakers with foam, which were to be shipped overseas.

s.  On or about July 10, 2020, Individual-2 transferred approximately $503.14 to Individual-1.

t.  On or about July 10, 2020, Individual-1 transferred approximately $600 to OLIVER.

u. On or about July 26, 2020, PHILLIP sent Individual-4 a photograph of a message thread containing prices for various Glock pistols. Individual-4 then forwarded to PHILLIP the contact information for Individual-1.

v. On or about July 27, 2020, PHILLIP and KING exchanged phone messages, in which the two discussed buying a box and obtaining an Airbnb rental to "load."

w. On or about July 28, 2020, KING transferred approximately $4,000 to OLIVER.

x. On or about July 29, 2020, PHILLIP and KING exchanged phone messages, in which KING sent a photograph of a speaker and PHILLIP responded that the space was too small to fit his "stuff."

y. On or about July 31, 2020, PHILLIP and Individual-4 exchanged phone messages, in which they discussed shipping a speaker to Individual-1.

z. On or about July 31, 2020, PHILLIP and KING exchanged phone messages, in which they discussed KING obtaining a speaker for PHILLIP.

aa. On or about August 14, 2020, PHILLIP and Individual-4 exchanged phone messages, in which they discussed PHILLIP buying two Taurus pistols for Individual-4.

bb. On or about August 15, 2020, PHILLIP and Individual-4 exchanged phone messages, in which they discussed purchasing sets of speakers and the difficulty opening them. PHILLIP and Individual-4 also discussed shipping a set of speakers to an address associated with PHILLIP in Pembroke Pines, Florida.

  cc. On or about August 15, 2020, Individual-2 instructed Individual-1 to ship a set of speakers to PHILLIP at the address associated with PHILLIP in Pembroke Pines.

  dd. On or about August 18, 2020, OLIVER sent PHILLIP a link to a webpage for an online firearms store listing a parts kit for a rifle, as well as a screenshot of gun parts kit in an online shopping cart.

  ee. On or about August 18, 2020, PHILLIP sent Individual-4 a video depicting him concealing firearms inside of a speaker, as well as photographs of firearms.

  ff. On or about October 31, 2020, Individual-1 bought a Taurus G2C 9mm pistol bearing serial number ABL113463 from a firearms store in Tampa, Florida.

  gg. On or about December 18, 2020, OLIVER spent approximately $455.96 at a boxing/fight equipment store in Miami, Florida.

  hh. On or about December 21, 2020, OLIVER transferred $500 to Individual-1.

  ii. On or about December 21, 2020, Individual-1 bought a SAR Arms SAR-9 9mm pistol bearing serial number T1102-20BV75451 from a firearms store in Tampa, Florida.

  jj. On or about January 15, 2021, Individual-1 bought a Taurus G3 9mm pistol bearing serial number ABN369536 and a Ruger Security-9 9mm pistol bearing serial number 384-03519 from a firearms store in Tampa, Florida.

kk. On or about January 27, 2021, Individual-1 bought approximately nine firearms magazines from a store in Hialeah, Florida. Individual-1 arranged to have the magazines shipped to PHILLIP at the address associated with PHILLIP in Pembroke Pines.

ll. On or about March 30, 2021, OLIVER and PHILLIP ordered approximately $2,400 worth of punching bags from the boxing/fight equipment store in Miami.

mm. On or about April 6, 2021, OLIVER spent approximately $115.56 at an air/sea container company.

nn. On or about April 7, 2021, OLIVER shipped a package concealing and containing various firearms and related equipment, including a Taurus G2C 9mm pistol bearing serial number ABL113463, a SAR Arms SAR-9 9mm pistol bearing serial number T1102-20BV75451, a Taurus G3 9mm pistol bearing serial number ABN369536, and a Ruger Security-9 9mm pistol bearing serial number 384-03519, from Miami, Florida to Trinidad and Tobago.

oo. On or about April 22, 2021, OLIVER canceled his cell phone service.

pp. In or around April 2022, OLIVER contacted a firearms seller to arrange to buy approximately 20 80% lower receivers or receiver blanks.

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1.  The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of 18 U.S.C. §§ 924(d) and 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2.  Upon conviction of a violation of Count One, contrary to 18 U.S.C. § 924(d) and in violation of 18 U.S.C. § 554, the defendants,

> TEVIN OBRIAN OLIVER,
> a/k/a "King Himself," a/k/a "Pa,"
> JAMEAL KAIA PHILLIP,
> a/k/a "Kai," a/k/a "Kaya," a/k/a "Kya," and
> EDWARD SOLOMAN KING III,
> a/k/a "Ed,"

shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 924(d), and 28 U.S.C. § 2461(c), any firearm or ammunition involved in or used in any knowing violation, as well as any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3.  The property to be forfeited includes, but is not limited to, the following items seized by authorities in Trinidad and Tobago on or about April 22, 2021, which had been shipped from Miami, Florida to Piarco International Airport via Laparkan Airways, Inc.:

    a. One SAR Arms SAR-9 9mm pistol bearing serial number T1102-20BV75451;

    b. One Ruger Security-9 9mm pistol bearing serial number 384-03519;

    c. One Taurus G3 9mm pistol bearing serial number ABN369536;

d. One Taurus G2C 9mm pistol bearing serial number ABL113463;

e. One Taurus G2C 9mm pistol bearing serial number TLT70544;

f. One Taurus G3 9mm pistol bearing serial number ABC401000;

g. One Taurus G3 9mm pistol bearing serial number ABC405471;

h. One Glock 19 9mm pistol bearing serial number WGX286;

i. One Glock 19 9mm pistol bearing serial number BFUZ185;

j. One Ruger .38 special caliber revolver being serial number 542-63242;

k. One Bulldog 12-gauge semi-automatic shotgun bearing serial number 12BD20-2415;

l. One desert-brown pistol of unspecified make and model with black slide;

m. One brown pistol of unspecified make and model with black slide;

n. One pistol of unspecified make and model;

o. Three AR-15 barrel foregrips;

p. 19 lower pistol grip assemblies/lower receivers;

q. 11 forearm bolt assemblies/upper receivers;

r. Three AR-15-style barrels with forearm grips;

s. Two shotgun chokes;

t. One AR-15 drum magazine;

u. 32 AR-15 magazines;

v. 34 9mm magazines;

w. Three 9mm drum magazines;

x. Six magazine couplers;

      y.     AR-15 ammunition, 9mm ammunition, .38 caliber ammunition, and shotgun shells;

      z.     One Romarm/Cugir model Micro Draco 7.62 caliber pistol bearing serial number PMD-11014-19; and

      aa.    One Taurus model PT111 G2A 9mm pistol bearing serial number TMB66883.

4. If any of the forfeitable assets described above, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third person;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be subdivided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p).

A TRUE BILL,

███████████████
_____
Foreperson

ROGER B. HANDBERG
United States Attorney

By: *[signature]*
Patrick D. Scruggs
Assistant United States Attorney

By: *[signature]*
Cherie L. Krigsman
Assistant United States Attorney
Chief, National Security and Cybercrime Section

FORM OBD-34
October 22

No. _____

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Tampa Division

THE UNITED STATES OF AMERICA

vs.

TEVIN OBRIAN OLIVER
a/k/a "King Himself," a/k/a "Pa"

JAMEAL KAIA PHILLIP
a/k/a "Kai," a/k/a "Kaya," a/k/a "Kya"

EDWARD SOLOMAN KING III
a/k/a "Ed"

## INDICTMENT

Violations: 18 U.S.C. § 371

A true bill,

███████████████
Foreperson

Filed in open court this 5th day of October 2022.

_____
Clerk

Bail $_____

GPO 863 525