UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 8:22-cr-343-SDM-AEP

TEVIN OBRIAN OLIVER

## UNITED STATES' SENTENCING MEMORANDUM

Based on the nature of the offense conduct, namely the significant number of firearms smuggled to Trinidad and Tobago—a country struggling to curb escalating gun violence—the United States respectfully requests that the Court sentence the Defendant to a term of imprisonment of 57 months, which falls at the high end of the advisory guideline range, and three years of supervised release.

### I. BACKGROUND

#### a. Facts

The Defendant, Tevin Obrian Oliver, is a citizen of Trinidad and Tobago. PSR ¶ 7. He came to the United States in 2012 and thereafter became a lawful permanent resident. *Id.* ¶ 48. At times relevant to this case, the Defendant lived in Homestead, Florida. *Id.*

Evidence from an investigation conducted by Homeland Security Investigations ("HSI") revealed that, beginning in approximately 2019, the Defendant and his codefendants, Jameal Kaia Phillip and Edward Soloman King, III, conspired with other unnamed individuals to smuggle a shipment of firearms and ammunition from the United States to Trinidad and Tobago. *Id.* ¶ 6.

In June 2020, an individual who resides in Tampa, Florida ("CC1") transferred at least two Taurus pistols to another individual known to the United States ("CC3") in the Tampa area. *Id.* ¶ 8. CC3 later gave the pistols to the Defendant, Phillip, and their conspirators at the Defendant's residence in Homestead, Florida, where the Defendant and Phillip had stored, disassembled, and concealed for shipment various firearms and firearms components. *Id.* ¶¶ 8, 9. CC3 observed numerous guns and firearm components, such as AR-15 style rifles, AK-47 style rifles, and shotguns, at the Defendant's home. *Id.* ¶ 8. The Defendant and Phillip also showed CC3 a kit that could convert a firearm to fully automatic. *Id.* Financial records showed that the Defendant had compensated CC1 and CC3 in the amount of several thousand dollars for acquiring and transferring firearms to conspirators. *Id.* ¶ 11.

A forensic examination of the Phillip's cellphone revealed extensive communications/text messages with coconspirators, including the Defendant and King, about the acquisition of firearms and their concealment for shipping. *Id.* ¶ 10. This included a photo of Phillip concealing firearms inside of a speaker, photos of a wrapped package, and photos of a pistol that had its serial number removed. *Id.*

On April 21, 2021, authorities in Trinidad and Tobago seized a shipment from the United States containing two punching bags and other goods. *Id.* ¶ 12. Concealed within the two punching bags were approximately eleven 9mm pistols, two .38 caliber special revolvers, a 12 gauge semi-automatic shotgun, three AR-15 barrel foregrips, 19 lower pistol grip assemblies, 11 forearm bolt assemblies, three AR-15-

style barrels with forearm grips, 32 AR-15 magazines, one AR-15 drum magazine, 470 rounds of AR-15 ammunition, 34 9mm magazines, three 9mm drum magazines, 284 9mm rounds, fifteen .38 caliber rounds, 36 shells, six magazine couplers, and two shotgun chokes. *Id.* The seizure included four 9mm pistols purchased in Tampa. *Id.* ¶¶ 12, 13.

Records from the freight forwarder/common carrier that had sent the shipment to Trinidad and Tobago showed that the Defendant had dropped off the package at a facility in Miami, Florida, providing his true name, California driver's license information, and known phone number to the carrier. *Id.* ¶ 13. Security footage corroborated that the Defendant had dropped off the package on April 7, 2021. *Id.* According to the airway bill, on April 13, 2021, the package was shipped via Laparkan Airways, Inc. from Miami International Airport to Piarco International Airport in Trinidad and Tobago. *Id.* ¶¶ 3, 14. At no time did the Defendant, Phillip, King, or any other conspirator provide written notice to the common carrier that the shipment contained firearms or ammunition. *Id.* ¶ 14.

Ultimately, the evidence showed that, between in or around April 2019, and in or around April 2022, the Defendant had worked with Phillip and relevant conspirators to acquire, conceal, and unlawfully export from the United States at least 200 firearms. *Id.* ¶ 15. The Defendant also built firearms from upper/lower components, including 80-percent-lower receivers (also known as ghost weapons), that were illegally exported. *Id.* Additionally, following the seizure of the shipment in

3

Trinidad and Tobago in April 2021, the Defendant and Phillip spoke about the fact that law enforcement had seized the firearms. *Id.*

On October 5, 2022, a grand jury charged the Defendant, Phillip, and King with one count of conspiracy to smuggle firearms from the United States, in violation of 18 U.S.C. §§ 371 and 554. The Defendant was arrested approximately two weeks later in the Southern District of Florida; he was released on bond with pretrial supervision.

On April 11, 2023, the Defendant pleaded guilty to Count One of the Indictment.

### b. Gun Trafficking in Trinidad and Tobago

As a citizen of Trinidad and Tobago, the Defendant is undoubtedly aware of the country's gun violence epidemic. According to an April 2023 report published by the Small Arms Survey, in 2020, Trinidad and Tobago experienced one of the highest homicide rates of the Caribbean Community ("CARICOM") member states (28.5 per 100,000 population). *See* Doc. 106-1, Anne-Séverine Fabre, Nicolas Florquin, Aaron Karp, & Matt Schroeder, *Weapons Compass: The Caribbean Firearms Study* 37 (April 2023). Seventy-five percent of total homicides in Trinidad and Tobago that year involved the use of a firearm. *Id.* at 38. Gang violence, drug trafficking, and access to illicit firearms have contributed to the rise of gun violence. *Id.* Trinidad and Tobago reportedly has more than 100 gangs, many of which are involved in trafficking and misuse of firearms. *Id.* at 41. Between 2017 and 2021,

police in Trinidad and Tobago seized approximately 4,087 illicit firearms, the majority of which were handguns. *Id.* at 71.

The United States is one of the largest sources of arms trafficking in the Caribbean. *Id.* at 75. Most of these firearms and ammunition are traced to states with seaports—Florida is high on the list—and are transported via shipping companies, postal and fast parcel services, and commercial airliners. *Id.* at 76, 80. Moreover, like in this case, concealing these firearms to evade detection is not rocket science: "[t]he trafficker simply needs to camouflage the items well enough to blend in with the thousands of shipments of other goods departing and arriving from international ports every day." *Id.* at 79.

Underscoring the gravity of this situation, on April 18, 2023, the Heads of Government of the Caribbean Community agreed to adopt legislation and licensing regulations that would ban assault-style weapons manufactured in the United States. *See* Associated Press, *Caribbean Leaders Agree on Plan to Ban Assault-style Weapons*, (Apr. 19, 2023, 2:56 PM), https://apnews.com/article/caribbean-assault-weapon-ban-caricom-rowley-4fd922b08f52031161a0de395613fe2f. The same day, the Heads of Government jointly declared a "War on Guns," to combat arms trafficking from the United States. *See Declaration by CARICOM Heads of Government – War on Guns*, (Apr. 18, 2023), https://caricom.org/declaration-by-caricom-heads-of-government-war-on-guns/. As part of that declaration, the CARICOM leaders called on the United States to "take action to stop the illegal exportation of firearms and

5

ammunition into the Caribbean." *Id.*; *see also* Doc. 108-1, Victim Statement by Republic of Trinidad and Tobago.

## II.   APPLICATION OF 3553(a) FACTORS

The United States respectfully submits that a sentence of 57 months in prison, to be followed by three years of supervised release, is "sufficient, but not greater than necessary," to serve the purposes set forth in 18 U.S.C § 3553(a).

First, the nature and circumstances of the offense favor a guidelines sentence, especially when viewed in the context of the arms trafficking scourge affecting Trinidad and Tobago. Here, the Defendant conspired to conceal and send over a dozen firearms, firearm components, and ammunition from the United States to Trinidad and Tobago. The Defendant is a textbook arms smuggler, using punching bags to hide dozens of weapons in a commercial shipment. Luckily, they were intercepted by Trinidad and Tobago authorities before they fell into the wrong hands. Over the span of three years, however, the Defendant worked with codefendant Phillip and others to export **over 200** firearms from the United States.

The history and characteristics of the Defendant similarly warrant a guidelines sentence. The Defendant's criminal history includes carrying a loaded firearm in public in 2016, for which he was sentenced to a term of probation that he violated four months later. PSR ¶ 37. He received only one criminal history point for that offense, allowing him to remain in Category I. But the Defendant's criminal history does not reflect that he is part of a trafficking network in Florida that has moved hundreds of firearms out of the United States. And no small part at that: the

Defendant built firearms, paid conspirators to straw purchase guns for him to export, and even hand delivered to the carrier the shipment that was seized in Trinidad and Tobago in April 2021.

Relatedly, a term of imprisonment of 57 months will "reflect the seriousness of the offense. . . promote respect for the law, and . . . provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). The Defendant's disregard for the laws of the United States and his home country is troubling. His disregard for the safety of others is worse. The volume and types of firearms and ammunition seized in this case bears repeating: over a dozen handguns, assault rifle components, and hundreds of rounds of ammunition, among others. *See supra* page 3. In purposefully evading the disclosure requirements to the carrier, the Defendant and his coconspirators put the safety of those on board the aircraft and those who handled the shipment at risk. The Defendant also helped facilitate the conspiracy from his own home in a residential area. He should be punished accordingly.

The requested sentence will afford adequate deterrence and protect the public from future crimes of the Defendant. *Id.* § 3553(a)(2)(B), (C). As noted above, traffickers like the conspirators in this case have taken advantage of vulnerabilities in our ports and modes of shipment. Those problems are for our government's other branches to address. This Court, however, can and must send a message to both the Defendant and would-be perpetrators of this crime, as well as to the public, that offenders will face significant prison time. *See United States v. Howard*, 28 F.4th 180,

208 (11th Cir. 2022) ("[G]eneral deterrence is a critical factor that must be considered and should play a role in sentencing defendant.").

Finally, a high-end sentence will "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). On July 6, 2023, this Court sentenced codefendant Jameal Phillip to 57 months' imprisonment and three years of supervised release. *See* Doc. 111. Although Phillip also had pleaded guilty to Count One (conspiracy), this Defendant organized the collection and assembly of firearms at his home, and he personally shipped the firearms that were seized in Trinidad and Tobago. At best, he is equally as culpable as Phillip.

## III.   CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence the Defendant to a term of imprisonment of 57 months and three years of supervised release.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:   */s/ Risha Asokan*
Risha Asokan
Assistant United States Attorney
Florida Bar No. 1003398
400 North Tampa Street, Ste. 3200
Tampa, Florida 33602
Telephone: (813) 274-6000
Email: risha.asokan2@usdoj.gov

8

**U.S. v. Tevin Obrian Oliver**                    **Case No. 8:22-cr-343-SDM-AEP**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Marie Louise Samuels Parmer, Esq.

> /s/ *Risha Asokan*
> Risha Asokan
> Assistant United States Attorney
> Florida Bar No. 1003398
> 400 North Tampa Street, Ste. 3200
> Tampa, Florida 33602
> Telephone: (813) 274-6000
> Email: risha.asokan2@usdoj.gov